CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
AUG 20 2019
JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| CYNTHIA B., ) | |
|     Plaintiff, ) | Civil Action No. 4:18-cv-00016 |
| ) | |
| v. ) | REPORT & RECOMMENDATION |
| ) | |
| ANDREW M. SAUL, ) | By:   Joel C. Hoppe |
| Commissioner of Social Security, ) |         United States Magistrate Judge |
|     Defendant.[1] ) | |

Plaintiff Cynthia B.[2] asks the Court to review the Commissioner of Social Security's final decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me under 28 U.S.C. § 636(b)(1)(B). ECF No. 13. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I cannot find that substantial evidence supports the denial of benefits. Accordingly, I recommend that the Commissioner's final decision be reversed and the case be remanded under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute

---

[1] Andrew M. Saul became Commissioner of Social Security in June 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

[its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe

impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 426.920(a)(4).³ The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

II. Procedural History

In December 2014, Cynthia filed for DIB alleging she was disabled by bipolar disorder, anxiety disorder, panic attacks, and "knee problems," among other medical conditions. *See* Administrative Record ("R.") 76–78, 202–05, ECF No. 11-1. A few months later, she filed for SSI alleging disability based on the same impairments. R. 86–88, 206–09. Cynthia was thirty-nine years old, or a "younger person" under the regulations, when she allegedly became disabled in April 2015. *See* R. 21–22, 76, 237; 20 C.F.R. §§ 404.1563(c), 416.963(c). Disability Determination Services ("DDS"), the state agency, denied her claims initially in September 2015, R. 74–95, and upon reconsideration in June 2016, R. 96–122. In December 2016, Cynthia appeared with counsel and testified at an administrative hearing before ALJ Susan Smith. R. 33–73. A vocational expert ("VE") also testified at this hearing. R. 63–72.

ALJ Smith issued an unfavorable decision on March 28, 2017. R. 10–22. She found that Cynthia had the following "severe impairments: dysfunction – major joints, chronic obstructive pulmonary disease (COPD), spine disorders, fibromyalgia, affective disorders, and anxiety

---

³ Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

disorders." R. 12. These impairments did not meet or medically equal the relevant listings. R. 13–14. ALJ Smith then evaluated Cynthia's residual functional capacity ("RFC") and found that she could perform "light work,"[4] as defined in the regulations, with additional restrictions:

> [S]he is limited to standing/walking 4 hours during an 8-hour workday. She can occasionally climb stairs and ramps, stoop, kneel, balance, crouch, crawl, and reach overhead on the left. She can frequently use her left hand for fingering and handling. She can never climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to hazards, . . . extreme cold, heat, and environmental irritants . . . . She is limited to simple, routine, repetitive tasks. She can have superficial contact with the public.

R. 15; *see* R. 20 (citing R. 106–07, 119–20). Some of these restrictions prevented Cynthia from returning to her past work as a customer-service representative. R. 21; *see* R. 65–66. Finally, based on this RFC finding and the VE's testimony, ALJ Smith concluded at step five that Cynthia was not disabled because she still could perform any of three "sedentary"[5] occupations (addresser, sorter, final assembler) that offered a significant number of jobs in the national economy. R. 22; *see* R. 65–67. In doing so, ALJ Smith necessarily credited the VE's testimony that all three jobs required "frequent" use of one or both hands, R. 67, 69, for fine or gross manipulation. *See* R. 22. The Appeals Council denied Cynthia's request for review, R. 1–2, and

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these relatively modest lifting requirements can perform "[t]he full range of light work" only if he or she can also "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Aside from the amounts of weight lifted and carried, "[t]he major difference between sedentary and light work is that most light jobs" require standing or walking for "most of the workday." SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983). Light work typically requires a total of six hours of standing and/or walking during a normal eight-hour workday, SSR 83-10, 1983 WL 31251, at *5–6, while sedentary work only requires about two hours, *Neal*, 2010 WL 1759582, at *2. Here, the VE explained that limiting a person to "superficial contact with the public" would rule out jobs falling in the "modified light range" because all of those jobs involve "dealing with the public." R. 66. Accordingly, the VE identified three sedentary occupations that required "only superficial contact with the public." R. 66–67.

4

this appeal followed.

### III. Discussion

Cynthia primarily challenges ALJ Smith's RFC finding that she "can frequently use her left hand for fingering and handling." *See* Pl.'s Br. 4–5, ECF No. 17. She asserts that the ALJ did not explain why she rejected Cynthia's testimony describing "severe problems" using that hand, and that her RFC analysis did "not adequately address" medical-source evidence suggesting that Cynthia's hand was "limited to a level less than frequent use, such as occasional use."[6] *Id.* at 4; *see id.* at 2, 4–5 (citing R. 560, 722, 744–45). The VE testified that limiting Cynthia to "only occasional use [of] either hand . . . would pretty much preclude sedentary work," R. 69, including as an addresser, final assembler, or sorter, R. 67. *See* R. 65–69. Cynthia objects that ALJ Smith did not explain how she weighed the VE's testimony on this point before concluding at step five that Cynthia was not disabled. Pl.'s Br. 6.

I agree, but for a slightly different reason: there is an apparent conflict between the VE's testimony, the *Dictionary of Occupational Titles* ("DOT"), and the ALJ's finding that Cynthia's RFC allowed her to do three kinds of jobs that existed in significant numbers in the national economy. R. 15, 22, 65–69; *see Pearson v. Colvin*, 810 F.3d 204, 207–11 (4th Cir. 2015). The ALJ's failure to identify and resolve that conflict requires reversal and remand. *Pearson*, 810 F.3d at 211–12; *see, e.g.*, *Keller v. Berryhill*, 754 F. App'x 193, 198–99 (4th Cir. 2018) (vacating district court's judgment, concluding *Pearson* error was not harmless, and remanding for the Commissioner to revolve the error); *Henderson v. Colvin*, 643 F. App'x 273, 277–78 (4th Cir.

---

[6] The Commissioner's rules define "occasionally" as "occurring from very little up to one-third of the time," and "frequently" as "occurring from one-third to two-thirds of the time." *Koisch v. Astrue*, 650 F. Supp. 2d 475, 488 (E.D. Va. 2009) (quoting SSR 83-10, 1983 WL 31251, at *5–6). Put differently, an "occasional" activity usually takes up "no more than about 2 hours of an 8-hour workday," whereas a "frequent" activity accounts for roughly six hours of the workday. SSR 83-10, 1983 WL 31251, at *5–6.

5

2016) (reversing district court's judgment and remanding for Commissioner to resolve *Pearson* error raised for the first time on appeal); *Rholetter v. Colvin*, 639 F. App'x 935, 938 (4th Cir. 2016) (same).

*

A claimant's RFC represents her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite her medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, function-by-function "limitations or restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015). ALJ Smith's RFC finding limited Cynthia to "occasionally . . . reach[ing] overhead on the left" and "frequently us[ing] her left hand for fingering and handling," among other things. R. 15.

ALJs use the RFC finding at steps four and five of the sequential disability determination. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5). At step four, the claimant must show that her RFC, as found by the ALJ, does not allow her to meet "the physical and mental demands" of her past relevant work. *Id.* § 404.1560(b), 416.960(b). Cynthia made this showing, so ALJ Smith moved on to step five. R. 21–22. There "the burden shift[ed] to the Commissioner to prove, by a preponderance of the evidence," *Mascio*, 780 F.3d at 635, that Cynthia could perform other, less demanding "kinds of jobs 'exist[ing] in significant numbers in the national economy,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)).

6

The ALJ "looks primarily to the DOT" to decide if the Commissioner carried his burden of persuasion. *Keller*, 754 F. App'x at 196 (internal quotation marks omitted); *see* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). "The ALJ may also . . . rely on VE opinion evidence—commonly provided by way of testimony at the ALJ hearing—'to address complex aspects of the employment determination, including the [VE's] observations of what a particular job requires in practice or the availability of given positions in the national economy.'" *Keller*, 754 F. App'x at 196 (quoting *Pearson*, 810 F.3d at 207). A VE's "testimony may count as substantial evidence" to deny disability benefits, *Biestek*, 139 S. Ct. at 1155, as long as it is reasonably reliable and supported by the record, *Fisher v. Barnhart*, 181 F. App'x 359, 365–67 (4th Cir. 2006); *Walls v. Barnhart*, 296 F.3d 287, 292 (4th Cir. 2002).

Sometimes "a VE's testimony that a claimant can perform a certain occupation may conflict, or seem to conflict, with the DOT's description," *Keller*, 754 F. App'x at 196, of that occupation's maximum physical or mental requirements, SSR 00-4p, 2000 WL 1898704, at *1. Thus, the ALJ must independently identify any "apparent" conflict between the VE's testimony and the DOT, "elicit a reasonable explanation" from the VE, and "explain in the [written] decision how he or she resolved the conflict" before relying on the VE's testimony to deny benefits. SSR 00-4p, 2000 WL 1898704, at *2, *4; *see Pearson*, 810 F.3d at 208–10. "[I]f the ALJ does not elicit this explanation" and resolve the apparent conflict on the record, "then the [VE's] testimony cannot provide substantial evidence to support" a denial of benefits. *Pearson*, 810 F.3d at 209.

* *

ALJ Smith asked the VE to identify jobs that Cynthia could perform if she were limited (as relevant here) to "occasionally" reaching overhead on the left and "frequently" using the left

7

hand for "handling and fingering."[7] *See* R. 65–66. The VE identified three representative occupations: "addresser," DOT # 209.587-010, with 68,000 jobs nationwide; "final assembler," DOT # 713.687-018, with 217,000 jobs nationwide; and "sorter and an inspector," DOT # 735.687-030, with 489,000 jobs nationwide. R. 65–67. In explaining his selections, however, the VE testified that the sorter/inspector job is listed in the DOT as requiring "*frequent . . . reaching*, handling, and fingering." R. 67 (emphasis added); *see Pacheco v. Astrue*, No. EDCV 09-1063, 2010 WL 3488215, at *5 (C.D. Cal. Aug. 31, 2010) (stating that the "jobs of inspector, assembler, and sorter. . . require frequently reaching."). He also testified that the addresser and final assembler jobs require "frequent handling and fingering," R. 67, but he did not clarify that they too are listed in the DOT as requiring "frequent reaching," *Sports v. Berryhill*, No. 3:16cv668, 2018 WL 1020133, at *4 (W.D.N.C. Feb. 22, 2018) (final assembler); *Carroll v. Comm'r, Soc. Sec. Admin.*, Civ. No. 16-1283, 2017 WL 1532547, at *2 (D. Md. Apr. 27, 2017) (addresser). When ALJ Smith asked the VE if his testimony was "consistent with" the DOT, R. 72, he "responded there were no such conflicts, apparent or otherwise,"[8] R. 22. ALJ Smith then relied on that testimony in concluding that Cynthia was not disabled because she could perform three kinds of jobs that existed in significant numbers in the national economy. R. 22.

But, ALJ Smith did not identify—let alone resolve—the apparent conflict between the RFC limiting Cynthia to "occasional" overhead reaching with one arm, R. 15, 65, and the VE's

---

[7] The ALJ's complete hypothetical question at the hearing, R. 65, matched the subsequent RFC finding in her decision, R. 15. *See Fisher*, 181 F. App'x at 365.

[8] The VE initially said there was "no inconsistency" between his testimony and the DOT. R. 72. When ALJ Smith noted he had "already indicated some areas that are not covered . . . by the DOT," the VE responded that his testimony on that point was "based on [his] personal experience and [his] research." *Id.* This exchange relates back to the VE's testimony that "exposure to fumes, odors, dust, gases, [and] poor ventilation" is "not addressed in the DOT," and that he was relying on his "personal experience" in concluding that the addresser, sorter/inspector, and final assembler jobs did not require "even moderate exposure" to these environmental irritants. R. 65–66, 68. ALJ Smith reasonably credited this explanation in her written decision. R. 22.

testimony that she could perform three jobs the DOT says require "frequent" reaching. *See* R. 22, 65–68. This was the same error as in *Pearson*, 810 F.3d at 210, and it requires remand for the same reasons. The DOT broadly "defines reaching as 'extending hand(s) and arm(s) in any direction,'" and it "does not specify the type of reaching involved" or distinguish between unilateral and bilateral reaching. *Id.* at 210–11. Accordingly, all three occupations identified "certainly *may* require," *id.* at 211, frequently reaching overhead with both arms—an activity ALJ Smith expressly said Cynthia could not do, R. 15, 65. *See* R. 66; *Sports*, 2018 WL 1020133, at *4 (final assembler); *Carroll*, 2017 WL 1532547, at *2 (addresser); *cf. Keller*, 754 F. App'x at 199 (declining to find that *Pearson* error was harmless where "the administrative record [did] not clearly demonstrate that [the claimant could] actually perform the occupations identified by the VE and relied on by the ALJ at the fifth step").

It is the ALJ's responsibility to address with the VE "exactly what form of reaching the stated occupations require and whether [Cynthia] can fulfill those requirements." *Pearson*, 810 F.3d at 211. If the VE's explanation "does not provide a reasonable basis for relying" on his testimony, then "that testimony cannot provide substantial evidence for a denial of benefits." *Id.* If the VE's explanation is reasonable, then the ALJ can explain in her decision how she resolved the apparent conflict with the DOT and safely rely on the VE's testimony at step five. *Id.* Resolving this apparent conflict is important because the Commissioner must prove by a preponderance of the evidence, *Mascio*, 780 F.3d at 635, that Cynthia can still do certain kinds of jobs that exist in significant numbers in the national economy, *Biestek*, 139 S. Ct. at 1152. Even if *some* addressers, sorters/inspectors, and final assemblers "need not frequently reach overhead with both arms, the *number* of positions in the national economy without this requirement matters." *Pearson*, 810 F.3d at 211. "Likely at least some have this requirement. If there are a

9

sufficient number of these positions that do not require frequent overhead reaching, the ALJ can properly find [Cynthia] not disabled," *id.*, as long as her decision is otherwise supported by substantial evidence. "If too many do have this requirement," then either the Commissioner will need to produce evidence that Cynthia can perform other less demanding jobs or the ALJ "will necessarily find that [she] cannot do work that exists in significant numbers in the national economy." *See id.*

* * *

At oral argument, the Commissioner argued that the *Pearson* error is harmless because Cynthia's record does not support an RFC finding that she can only "occasionally" use her left arm for overhead reaching. *See* Def.'s Br. 9–11 (noting that the ALJ rejected Cynthia's testimony that she could not use her left arm at all because it was inconsistent with her generally normal upper-extremity exams, routine treatment, and report in June 2016 that she played volleyball with her daughter), ECF No. 22. ALJ Smith, however, found that it did. R. 15; *see* R. 22 (ALJ explaining that she gave the DDS reviewers' medical opinions, which did not include any limitations on the upper extremities, "partial" credit because "the weight of the evidence at the hearing level supports a finding" that Cynthia "also has manipulative limitations"). This Court "cannot simply look at the same evidence and reverse the ALJ on the basis that it could have reached a different result." *Carr v. Berryhill*, No. 6:16cv10, 2017 WL 4127662, at *5 (W.D. Va. Sept. 18, 2017).

## IV. Conclusion

I take no position on whether Cynthia is entitled to disability benefits. On the current record, however, I cannot find that substantial evidence supports the Commissioner's final decision. Accordingly, I respectfully recommend that the presiding District Judge **GRANT** the Plaintiff's Motion for Summary Judgment, ECF No. 18, **DENY** the Commissioner's Motion for

Summary Judgment, ECF No. 19, **REVERSE** the Commissioner's final decision, **REMAND** the matter for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: August 20, 2019

Joel C. Hoppe
United States Magistrate Judge